# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23273-CIV--SEITZ/O'SULLIVAN

STATE NATIONAL INSURANCE
COMPANY,

     Plaintiff,

v.

THE CITY OF MIAMI,

     Defendant.

_____/

## ORDER DENYING CITY OF MIAMI'S MOTION FOR JUDGMENT ON THE PLEADINGS AND STAYING COUNT I IN-PART UNTIL RESOLUTION OF UNDERLYING LITIGATION

THIS MATTER is before the Court on Defendant City of Miami's ("Miami's") Motion For Judgment On The Pleadings [DE-8] in its favor on Plaintiff State National Insurance Company's ("State National's") Complaint. The Complaint seeks a judgment declaring that State National (1) is not obligated to provide coverage to Miami, pursuant to an excess liability insurance policy, with respect to lawsuits arising from the June 16, 2007 shootings at a graduation party held at the Polish-American Club of Miami (Count I); (2) does not have a duty to defend those actions, even if Miami tenders to State National the amount of its self-insured retention obligation (Counts II and III); and (3) cannot be bound by a consent judgment between Miami and the plaintiffs in the underlying lawsuits (Count IV). Miami seeks judgment as to all four counts in State National's Complaint.

Having considered the Parties' papers and the terms of the insurance policy, the Court finds that the policy does not impose on State National a duty to defend, even if Miami tenders to State National the value of a single self-insured retention. Thus, the Court will deny Miami's Motion as to Counts II through IV. However, because State National does not allege that the underlying

1

litigation has been resolved, State National does not present a ripe controversy as to the duty to indemnify, and the Court will stay proceedings on Count I until the underlying litigation is resolved.

## I.      Background Facts

### A.      Public Entity Excess Liability Policy

This declaratory judgment action involves a dispute between State National and Miami over the interpretation of a public entity excess liability policy the Parties executed in 2006. The policy at issue, Public Entity Excess Liability Policy No. MBD 02669 12 ("Policy") was in effect from October 1, 2006 to October 1, 2007. (DE-1, Complaint at ¶ 9; DE-9-1, Policy at page 7). In at least two sections, the Policy provides Miami excess liability coverage for damages arising from personal injury or bodily injury caused by Miami in the course of Miami's police activities. First, in the Policy's General Liability Form, State National promises to provide excess liability coverage to Miami for three types of losses: (1) damages claimed in lawsuits arising from bodily injury[1] and property damage; (2) medical payments for bodily injury caused by accidents on the City's property or because of the City's operations; and (3) damages claimed in lawsuits arising from personal injury[2] and advertising injury. (Policy at pages 22-26). Second, the Contract has a Police/Peace Officers Coverage Form ("Police Coverage Form") in which State National promises to "pay...all

---

[1]  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (Policy at page 30).

[2]  "Personal injury" is defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses:

|   |   |
|---|---|
| a. | False arrest, detention or imprisonment; |
| b. | Malicious prosecution; |
| c. | The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by on behalf of its owner, landlord or lessor; |
| d. | Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or |
| e. | Oral or written publication of material that violates a person's right of privacy. |

(Policy at page 32).

sums which the insured shall become legally obligated to pay as damages because of injury... arising

out of" a number of enumerated offenses, including assault or battery, if the offense was committed

in the conduct of Miami's police activities.[3]   (*Id.* at page 48).

However, the Policy provides that State National's coverage is triggered only upon an

"occurrence," and only in excess of a $500,000 self-insured retention ("SIR") responsibility for each

"occurrence." (*See* Policy at page 7, Public Entity Excess Liability Policy Declarations).

"Occurrence" is defined in the Policy's General Liability Form as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at page

32).  That Form also contains a corresponding provision excluding coverage for injuries that are

"expected or intended from the standpoint of the insured," such that they do not necessarily arise

from an "accident." (Policy at page 22).

The Policy also contains conflicting provisions regarding which Party has the duty to defend

an action for damages covered under the Policy.  For example, the General Liability Form imposes

on State National the duties to defend and indemnify Miami for suits and judgments arising from

covered damages:

> [State National] will pay those sums that the insured becomes legally obligated to
> pay as damages because of 'bodily injury' or 'property damage' to which this
> insurance applies.  [State National] will have the right and duty to defend any 'suit'
> seeking those damages.  [State National] may at [its] discretion investigate any

---

[3]  Specifically, the Police Coverage Form provides that:

[State National] will pay...all sums which the insured shall become legally obligated to pay as
damages because of injury (herein called "personal injury")...arising out of one or more of the
following offenses committed in the conduct of the named insured's business:

| | |
|---|---|
| Group A. | False arrest, detention, or imprisonment or malicious prosecution; |
| Group B. | The publication or utterance of a libel or slander...; |
| Group C. | Wrongful entry or eviction...; |
| Group D. | Erroneous service of civil papers, false imprisonment, or assault and battery. |

(Policy at page 48).

'occurrence' and settle any claim or 'suit' that may result.

(*Id.*). Likewise, the Police Coverage Form provides that State National "shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent." (*Id.* at 48). However, the Self-Insured Retention Endorsement ("SIR Endorsement") conflicts with the terms of the General Liability Form in that it provides as follows: "In the event of any occurrence which ... is likely to give rise to liability under this Policy.... [Miami] shall be obligated to ... provide an adequate defense and investigation of any action for or notice of any actual, potential or alleged damages." (Policy at page 52). The SIR Endorsement expressly states that it "modifies" the General Liability Form. (*Id.*).

### B.       Underlying Litigation

This action arises from four lawsuits for breach of contract and negligence brought against Miami, the Miami Police Department, and/or one or more of its employees relating to shootings that took place at a graduation party held at the Polish-American Club of Miami on June 16, 2007 ("Underlying Litigation"). (Complaint at ¶¶ 6-7). Plaintiffs in the Underlying Litigation allege that the Miami Police Department entered into a contract to dispatch off-duty police officers to provide security for a high school graduation party held at the Club. (*Id.* at ¶ 15). Evidence produced during discovery in the Underlying Litigation indicates that a Miami police officer who agreed to provide security at the Club on the night in question made a conscious decision in advance of the party that he would intentionally not report to the Club to provide security because he was concerned that conditions at the party would be too dangerous. (*Id.* at ¶ 16). According to the complaints in the underlying litigation, Miami officers did not show up at the event. (*Id.* at ¶ 17). In the absence of

4

requested security, a gunman at the party shot six partygoers, killing two of them. (*Id.*). Plaintiffs in the Underlying Litigation are the living victims of the shooting spree and the estates of the deceased victims. (*Id.* at ¶¶ 7-8).

Miami defended itself upon the filing of the Underlying Litigation. (*Id.* at ¶ 21). However, on October 9, 2009, Miami indicated to State National that it was contemplating abandoning its defense of the Underlying Litigation, and would require State National to defend those claims by sending State National a "partial, conditional check for $500,000, subject to later reimbursement costs." (*Id.* at ¶ 22). According to State National, Miami has also threatened to enter into a consent judgment with plaintiffs in the Underlying Litigation, with the understanding that the plaintiffs would then attempt to collect on that judgment against State National. (*Id.* at ¶ 23).

In response to Miami's representations, State National filed its Complaint in this action on October 28, 2009, seeking a declaratory judgment on four different counts. Under Count I, State National seeks judgment declaring that it owes no coverage with respect to the Underlying Litigation because the injuries in that Litigation did not arise from "an accident," but instead were "expected or intended from the standpoint of the insured." (*Id.* at ¶¶ 27-28). Count II seeks a judgment declaring that Miami has the duty to provide an adequate defense of the Underlying Litigation, and cannot transfer that duty to State National by paying State National money. Relatedly, Count III seeks a judgment declaring that Miami's attempt to tender $500,000, the amount of a single SIR, is insufficient to trigger coverage. Finally, under Count IV, State National asks for a judgment declaring that State National cannot be bound by a settlement agreement between Miami and plaintiffs in the Underlying Action.

Miami moves for a judgment on the pleadings with respect to all Counts in State National's

Complaint. On Count I, Miami claims that the Underlying Litigation constitutes one "occurrence" under the General Liability Form and no exclusion applies to that Litigation and, alternatively, Miami is entitled to coverage under the Police Coverage Form. With respect to Counts II and III, Miami claims that State National has a duty to defend in the Underlying Litigation, if not under the terms of the General Liability Form or Police Coverage Form, then certainly after Miami tendered a single SIR. Finally, Miami claims that because State National has breached its duty to defend, it can be bound under *Coblentz v. American Surety Co.*, 416 F.2d 1059 (5th Cir. 1969) by any settlement agreement Miami reaches with plaintiffs.

### C.    Procedural History

This is actually the second action in which this Court has had to resolve disputes between State National and Miami as to the interpretation of the Policy – the Court has already made a number of significant rulings interpreting the Policy in a related action, *State Nat'l Ins. Co. v. The City of Miami*, 08-22861-CIV-SEITZ/O'SULLIVAN. First, on June 16, 2009, this Court held that the $500,000 SIR obligation applies to the Police Coverage Form because (1) the entire insurance contract is an excess liability policy, subject to the $500,000 SIR obligation, with no exclusion for the Police Coverage Form because that Form cannot be interpreted separately from the rest of the Policy; and (2) the Police Coverage Form modifies, and is incorporated into, the General Liability Form, which is undisputably subject to the $500,000 self-insured retention obligation. Then, on May 11, 2010, the Court ruled, following the Eleventh Circuit Court of Appeals's decision in *State Nat'l Ins. Co. v. Lamberti*, 362 Fed. Appx. 76 (11th Cir. 2010), that the shooting spree from which the Underlying Litigation arose constituted multiple "occurrences" under the Policy, not one "occurrence."

## II.     Standard For Judgment On The Pleadings

Under Fed. R. Civ. P. 12(c), judgment on the pleadings is appropriate where there are no

material facts in dispute, and judgment may be rendered by considering the substance of the

pleadings and any judicially noticed facts. *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002).

The standard applied to a Rule 12(c) motion is essentially, if not entirely, identical to the standard

applied to a Rule 12(b)(6) motion. *See ThunderWave, Inc. v. Carnival Corp.,* 954 F.Supp. 1562,

1564 (S.D. Fla. 1997). Thus, in considering a Rule 12(c) motion, a court must accept all allegations

in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.*

Here, the Court may also consider the terms of the Policy, because the agreement, which is central

to the Parties' dispute, has been filed in the record, with no challenges to its authenticity [DE-9-1].

*See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (in ruling on Rule 12(c) motion, external

documents may be considered only when undisputed and central to the plaintiff's claims).

## III.    Analysis

To resolve Miami's Motion For Judgment on the Pleadings, the Court must accept the

allegations in the Complaint as true, and examine the following issues: (1) whether State National is

obligated to provide coverage at all in light of testimony from the Miami police officer who agreed

to provide security at the party that he made a conscious decision not to report because he had

concerns that conditions would be unsafe; (2) if State National is obligated to provide coverage,

whether that obligation includes a duty to defend that Underlying Litigation in the first instance, and

whether Miami can transfer that duty to State National by tendering a single SIR; and (3) whether a

consent judgment executed between Miami and the plaintiffs will be binding on State National

because it has refused to defend the Underlying Litigation.

7

In Florida, the interpretation of an insurance contract is a question of law to be determined by the court. *See Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). It is well-settled that insurance contracts are to be construed in accordance with the plain language of the policy, with any ambiguity interpreted liberally in favor of the insured and strictly against the insurer. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000). Policy language is considered ambiguous if the language is susceptible to more than one reasonable interpretation, *see Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004), and a court may look to parol evidence only if there is ambiguity in the agreement. *See Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001); *see also Monticello Insurance Co. v. City of Miami Beach*, 2009 WL 667454, * at 10 (S.D. Fla. 2009). In arriving at a reasonable interpretation, the "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties -- not a strained, forced, or unrealistic construction." *See Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 736 (Fla. 2002).

The Court will address first the issue of whether State National has a duty to defend under the terms of the Policy because resolving that issue may streamline the consideration of the remaining issues raised by Miami's motion. If Miami cannot show that State National has the duty for defending litigation related to covered damages, then Miami's argument that the complaints in the Underlying Litigation trigger that duty is moot for purposes of this Motion, and the Court will simply consider whether the alleged developments in that Litigation have triggered State National's duty to indemnify.

### 1.     Duty To Defend

Miami claims that State National has the duty to defend the Underlying Litigation under the terms of the General Liability Form and the Police Coverage Form, and as a result, is entitled to judgment on the pleadings as to Counts II and III.  Assuming that the terms of either the General Liability Form or the Police Coverage Form govern, Miami would be correct as both Forms unambiguously impose upon State National "the right and duty to defend any suit against the insured seeking damages on account of "covered injuries." (Policy at 48; *see also*, Policy at 22).

However, Miami never acknowledges the facts that the SIR Endorsement expressly modified the General Liability Form, or that this Court has already held that "the Police Coverage Form specifically modified, and is incorporated into, the General Liability Form." (*State Nat'l Ins. Co. v. City of Miami*, Case No. 08-22861, DE-41, Order Granting Plaintiff's Motion For Judgment On Pleadings, at page 7).[4]  As a result of the Court's previous ruling and the doctrine of collateral

---

[4]  The Court held that the Police Coverage Form was incorporated into the General Liability Form for two reasons:

> First, the Police Coverage Form contains an "Additional Definitions" section.  The word "Additional" indicates, on its face, that the Police Coverage modifies or supplements a prior coverage form.
>
> ...
>
> Second, and more importantly, the General Liability Form provides coverage for "personal injury," and expressly defines that term as: (1) false arrest or imprisonment; (2) malicious prosecution; (3) wrongful evictions; (4) libelous or slanderous statements; and (5) publications that violate rights of privacy.  Significantly, the *sole* purpose of the Police Coverage Form is to enlarge the definition of "personal injury" to include erroneous service, assault, and battery.  In other words, the General Liability Form provides coverage for "personal injury," while the Police Coverage Form simply modifies the definition of "personal injury," to increase the scope of coverage provided under the General Liability Form.

(*Id.* at pages 7-8).  Moreover, the Court added, "The interdependence between the General Liability Form and Police Coverage Form is also supported by the fact that the specific coverage exclusions, set forth in the Police Coverage Form, are substantively identical to the 'personal injury' exclusions contained in the General Liability Form.  For example, both Forms contain an intentional act exclusion for legal violations "committed by," or with the "consent," of the City. (*Id.* at page 8 n. 13).

estoppel, the terms of the SIR Endorsement supercede conflicting terms in the Forms in this proceeding.[5] Even if that were not the case, Florida law provides that "in general, to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls." *Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London*, 696 So. 2d 376, 379 (Fla. 1st DCA 1997) (citing 13A John A. Appleman and Jean Appleman, *Insurance Law & Practice* §§ 7537-8 (1976)); *see also, Family Care Ctr., P.A. v. Truck Ins. Exch.*, 875 So. 2d 750, 752 (Fla. 4th DCA 2004) ("Even if there were an ambiguity between the endorsement and the body of the policy, the endorsement, which is clear, controls."). Miami has not provided any reason why the Court should deviate from the general rule that endorsement provisions must control over inconsistent provisions in the body of the Policy.

Because the terms of the SIR Endorsement trump the terms of the General Liability Form (and, by extension, the terms of the Police Coverage Form), the SIR Endorsement's provision addressing defense responsibilities govern in this action. That provision requires Miami to "provide an adequate defense ... of any action for ... any actual, potential or alleged damages" likely to give rise to liability under the Policy. A provision obligating Miami to "provide an adequate defense" obviously cannot be read to unambiguously impose upon State National the duty to defend, and

---

[5] "Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of an issue that has already been litigated and decided." *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1328 (11th Cir. 2003). Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Irvin v. United States*, 335 Fed. Appx. 821, 824 (11th Cir. 2009) (quotation omitted). Collateral estoppel "does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Shields v. Bellsouth Advertising and Pub. Co.*, 228 F.3d 1284, 1289 n.7 (11th Cir. 2000). As this Court has already decided that the SIR Endorsement modifies both the General Liability Form and Police Coverage Form, Miami is precluded from relitigating that issue in these proceedings.

Miami's Motion For Judgment as to Count II must be denied.[6]

With respect to Count III, Miami argues that even if it has a duty to defend, that duty can be transferred to State National through tender to State National of a single SIR of $500,000. However, even if such a transfer was possible under the Policy, tender of a single SIR of $500,000 cannot be adequate to do so in this case in light of the Court's holding in the related action that Miami is responsible for multiple SIR's with respect to the Underlying Litigation. (*State Nat'l Ins. Co. v. City of Miami*, Case No. 08-22861, DE-79, Order Granting Plaintiff's Motion For Summary Judgment, at page 10) (Florida law "simply does not allow for the shooting spree, as opposed to one gunshot, to constitute a single occurrence" under the Policy).  Accordingly, Miami's Motion For Judgment as to Count III must also be denied.

### 2.    Binding Nature of Settlement

Having denied Miami's Motion as to Counts II and III, the Court need only briefly address its Motion as to Count IV.  Miami argues, based on *Coblentz v. American Surety Co.*, 416 F.2d 1059 (5th Cir. 1969), that it is entitled to a judgment on Count IV because State National can be bound by a consent judgment for damages when the claim falls within coverage and the insurer wrongfully refuses to defend.  However, Miami's argument is premised on an assumption that State National has wrongfully refused a duty to defend, *see Chomat v. Northern Ins. Co.*, 919 So. 2d 535, 537 (Fla. 3rd DCA 2006) (recovery under a *Coblentz* agreement requires that the insurer prove coverage, reasonableness of settlement and *wrongful refusal to defend*), and the Court has already found that Miami has not shown a wrongful refusal to defend, even if Miami has tendered a single SIR.  As a result, Miami's Motion For Judgment as to Count IV will be denied.

---

[6] While State National has not filed its own motion for judgment on the pleadings, it appears to the Court that this provision unambiguously places the duty to defend on Miami.

11

### 3.     Coverage

Finally, Miami claims that it is entitled to judgment on Count I, in which State National asserts that State National does not owe coverage because the injuries did not arise from an "accident" or "occurrence." Miami argues that the General Liability Form provides for coverage of the causes of action asserted and, even if it did not, the Police Form would provide coverage.[7] In light of the Court's ruling that Miami has not shown that State National owes a duty to defend either outright or upon the tendering of a single SIR, the Court only need address whether Miami can be entitled to judgment on State National's claim that State National does not owe a duty to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies."

However, the Court finds that it cannot resolve Miami's claim with respect to the duty to indemnify because the issue of whether State National owes a duty to indemnify is not ripe for adjudication, even taking the allegations in the Complaint as true. While State National argues that it does not a owe a duty to provide coverage because of events that have taken place in discovery, the duty to indemnify can only be assessed upon the conclusion of the Underlying Litigation. *See, e.g., Smithers Constr. Inc. v. Bituminous Cas. Corp.*, 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ("an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit"); *Northland Cas. Co. v. HBE Corp.,* 160 F.

---

[7] With respect to the General Liability Form, Miami argues that the Form provides coverage, taking the alleged facts as true, for three reasons: (1) the Underlying Litigation is premised on claims of negligence and breach of contract, not intentional conduct; (2) the Miami law enforcement officer's act of deciding not to report to the graduation party does not trigger the intentional acts exclusion because the decision does not evidence a "specific intent" to cause injury to a third party; and, (3) under the Policy's "Separation of Insureds" clause, any intentional acts of the law enforcement officer cannot be imputed to Miami. Moreover, Miami argues that the Police Coverage Form provides coverage, because the claims arise out of an assault and battery that took place in the conduct of Miami's business, and the Police Coverage Form has no intentional acts exclusion.

Supp. 2d 1348, 1360 (M.D. Fla. 2001) ("Because an insurer's duty to indemnity is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying action."). Accordingly, the Court will deny Miami's Motion For Judgment with respect to Count I, and will stay proceedings on that Count to the extent it requests a declaration as to State National's duty to indemnify until resolution of the Underlying Action. *See Smithers*, 563 F. Supp. 2d at 1348 (staying declaration judgment action as to duty to indemnify until resolution of the underlying action). Having carefully considered the Motion For Judgment On The Pleadings, it is hereby

ORDERED THAT

(1) City of Miami's Motion For Judgment On The Pleadings [DE-8] is DENIED.

(2) Further proceedings as to Count I of State National's Complaint are STAYED to the extent it asks for a judgment declaring that State National has no duty to indemnify because the Court presently lacks subject matter jurisdiction on that issue.

DONE and ORDERED in Miami, Florida, this 21st day of September, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record

13